UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | Cause No.:3:15-cv-486-RLM |
| | ) | (Arising from 3:14-cr-022-RLM) |
| LUIS TREVINO | ) | |

OPINION AND ORDER

Luis Trevino pleaded guilty to possession with intent to distribute cocaine. The court sentenced him to 180 months imprisonment to be followed by three years of supervised release. Mr. Trevino[1] moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, and the court held an evidentiary hearing. For the reasons that follow, the court now denies Mr. Trevino's motion.

I. Background

The precise sequence of events underlying Mr. Trevino's arrest and the police search of his home is disputed, but both sides agree to the following basic fact pattern. During a fight at the Trevino residence, Mr. Trevino's girlfriend called emergency services and officers were dispatched to the house to deal with a suspected domestic dispute. Upon entering, the officers smelled a strong odor of raw marijuana. After separating and talking to the girlfriend, officers eventually arrested both Mr. Trevino and his brother Javier and at some point

---
[1] Luis Trevino was indicted jointly with his brother, Javier Trevino. This opinion refers to the petitioner, Luis Trevino, as "Mr. Trevino" and to his brother as "Javier."

obtained a search warrant for the house. Either before or after the officers got a warrant (depending on whose testimony you believe), they searched the house and discovered marijuana, cocaine, cash, and two guns.

The Trevino brothers were jointly indicted on drug distribution and felon-in-possession charges, and their family hired attorneys William Stanley and Michael Tuszynski to represent both brothers. When they appeared for their initial appearance with Mr. Tuszynski, United State Magistrate Judge Christopher A. Nuechterlein warned the Trevino brothers of the danger of sharing lawyers:

> You're not asking the Court to appoint counsel. You're asking, each of you, that you be allowed to retain counsel, and that is fine. Mr. Tuszynski, who is in practice with Mr. Stanley, is here. But, Mr. Tuszynski, I caution you about representing two defendants on the same indictment. It's possible, but it requires care. Let me explain that to the defendants. Mr. Tuszynski and Mr. Stanley will take this up with you, but there sometimes can be a conflict of interest that may not be apparent initially and a lawyer cannot represent one client against another. So it can be very delicate. Again, the law allows it, but we have to be very careful that you understand what your rights are with respect to having essentially the same lawyer; and even though they're two lawyers in the same firm, the law looks at them as one because they practice together. I'll allow Mr. Tuszynski to explain that further with you, and we'll see how that proceeds.

The brothers chose to proceed with the joint representation, and were assigned an April 2014 trial date. About a week later at the arraignment and detention hearing, the magistrate judge again advised both Trevino brothers of the dangers of joint representation – including a specific admonition that even if there seemed to be no conflict at the time, a conflict could later arise and might be particularly likely in the context of plea negotiations where the government might want one brother to testify against the other. The magistrate judge described getting

another attorney for one brother as "the safer course of action" and strongly suggested that the brothers do so, but again both brothers chose to continue the joint representation.

In early April, Mr. Stanley and Mr. Tuszynski filed separate, identical motions to suppress on their clients' behalf. The court continued the trial date until July, and gave the government until May 18 to respond to the suppression motions. On May 16 – two days before the government's response to the suppression motion was due – Mr. Stanley met with Luis Trevino for more than an hour at the county jail. What was said at this conference is central to the parties' dispute, and will be discussed later. The government didn't file its response to the suppression motions by May 18; instead, both defendants filed plea agreements on May 20.

Mr. Trevino's plea agreement recited that no one had made any threats or promises to him other than what appeared in the plea agreement itself, and stated that Mr. Trevino was satisfied with the job his lawyer had done for him. The plea agreement also contained the following waiver:

> I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742, or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

The magistrate judge took the defendants' guilty pleas on May 22, and the pleas were later accepted. At the change of plea hearing, Mr. Trevino orally denied that anyone had made threats or promises to him, said he understood the agreement,

and admitted to possessing cocaine with intent to sell it. The guilty pleas rendered the pending suppression motion moot, so the court never resolved the parties' factual disputes about the search of the Trevino residence. Luis Trevino was eventually sentenced to 180 months' imprisonment, while Javier received a somewhat lighter sentence.

Mr. Trevino filed a timely motion under 28 U.S.C. § 2255, raising four issues related to ineffective assistance of counsel. Mr. Stanley had passed away before Mr. Trevino filed his petition. The court appointed counsel for Mr. Trevino and conducted an evidentiary hearing on April 25, 2016.

## II. STANDARD OF REVIEW

A federal prisoner can challenge his sentence on the ground that the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Mr. Trevino is entitled to relief under § 2255 only if he can show a "fundamental defect which inherently results in a complete miscarriage of justice," United States v. Addonizio, 442 U.S. 178, 185 (1979), or "an omission inconsistent with the rudimentary demands of fair procedure," Hill v. United States, 368 U.S. 424, 428 (1962).

## III. DISCUSSION

Mr. Trevino alleges that his attorneys provided him with constitutionally ineffective assistance, and identifies four supposed omissions or errors by his attorneys that he believes undermined the fairness of the proceedings against him.[2]

The Sixth Amendment guarantees criminal defendants the right to constitutionally sufficient representation by an attorney. This right provides for only "a professionally competent defense, not for the best possible defense." Rutledge v. United States, 230 F.3d 1041, 1053 (7th Cir. 2000) (quoting Holman v. Gilmore, 126 F.3d 876, 883 (7th Cir. 1997)). To prevail on an ineffective assistance of counsel claim, Mr. Trevino must show both that his attorney's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688-693 (1984). This is a difficult standard to meet: to prevail, Mr. Trevino must show both "that counsel made errors so serious that 'counsel' was not

---

[2] Although Mr. Trevino also lists "prosecutorial vindictiveness" as a grounds for relief on his § 2255 form, his memorandum elaborating on and explaining the form makes no mention of this claim and only argues ineffective assistance of counsel. The court can't evaluate Mr. Trevino's claim based on no more than a two-word label, and in any case Mr. Trevino lost his right to bring such a claim when he signed a plea agreement that included an unambiguous waiver of his right to appeal or collaterally attack his conviction. Even were the court to speculate as to what Mr. Trevino meant, and even had he not waived the claim, he would lose. To make out a claim for vindictive prosecution, Mr. Trevino would need to show by objective evidence that he "would not have been prosecuted but for the government's animus or desire to penalize him." United States v. Jarrett, 447 F.3d 520, 525 (7th Cir. 2006). Mr. Trevino, a convicted felon, was caught red-handed with marijuana, cocaine, and guns in his house – he can hardly argue that a prosecutor presented with this evidence would *never* have brought charges absent some sort of personal animus.

functioning as the counsel guaranteed the defendant by the Sixth Amendment" and "that counsel's errors were so serious as to deprive [Mr. Trevino] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687; *see also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

    A.    <u>Claim 1: Ineffective Assistance Due to Conflict of Interest</u>

Mr. Trevino's chief and strongest argument is that he was deprived of effective assistance of counsel because Mr. Stanley (and Mr. Tuszynski, as well, but Mr. Trevino dealt chiefly with Mr. Stanley at the critical time) had an actual conflict of interest when consulting with Mr. Trevino about whether to accept the government's plea offer. That claim hinges on the fact that the same attorneys represented both Trevino brothers, and revolves around what happened when Mr. Stanley met with Mr. Trevino at the county jail on May 16.

At the § 2255 evidentiary hearing, Mr. Trevino testified that he thought the meeting would be about the pending suppression motion, given how near it was to the government's response deadline. Instead, he says, Mr. Stanley showed him a page of new discovery from the government and a proposed plea agreement. The new discovery related only to Javier and detailed his alleged involvement in drug deals with a different person back in 2012. Mr. Trevino asked Mr. Stanley

6

what the new discovery meant, and Mr. Stanley said it changed everything: if both brothers didn't withdraw their suppression motions and plead guilty immediately, the government could pursue other charges against Javier and might even file a § 924(c) charge against Mr. Trevino.

Mr. Trevino asked if this was the conflict Magistrate Judge Nuechterlein had warned him about, and Mr. Stanley responded only that it would be easier to do what the government wanted and plead guilty. Mr. Stanley said that the brothers might have to testify against each other if they went to trial. Mr. Trevino was concerned with what Javier thought, with a pending state court probation revocation proceeding, and with a possible career offender enhancement at his sentencing. Mr. Stanley didn't think the government was going to push for a career offender enhancement, and the Assistant U.S. Attorney had said he would call the county prosecutor about dismissing the state probation revocation.

And that, Mr. Trevino testified, is what happened in his meeting with Mr. Stanley that day. He thinks the meeting lasted for about an hour, and thinks he might have signed the proposed plea agreement that day.

If Mr. Trevino's story were true, Mr. Trevino's right to counsel likely was violated. The constitutional right to effective assistance of counsel necessarily includes "a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980)); see also United States v. Lafuente, 426 F.3d 894, 897 (7th Cir. 2005) ("Criminal defendants are guaranteed effective assistance of counsel,

and have the right to representation free from conflict of interest, at all stages of the proceedings against them."). If the government in fact threatened to charge Javier with new crimes unless Mr. Trevino changed his plea, the brothers' interests would have come into direct opposition – yet they remained represented by the same attorneys. In advising Mr. Trevino about whether to take the government's plea offer, counsel would have been forced to advance the interests of one client over the other. The law deems this an "actual conflict," and it is considered such an unusually severe deprivation of rights that a petitioner need not even show Strickland prejudice; "[i]f there is any 'adverse effect' on the attorney's performance, prejudice is presumed and the defendant's argument prevails." Freeman v. Chandler, 645 F.3d 863, 869 (7th Cir. 2011).

The court doesn't believe Mr. Trevino's testimony about his meeting with Mr. Stanley. First, there was no threat to bring additional charges against Javier or to have one brother testify against the other. The Assistant U.S. Attorney, Frank Schaffer, so testified at the hearing on Mr. Trevino's petition. His testimony was credible and, as will be explained shortly, supported by the record. Mr. Schaffer testified that he only gave Mr. Stanley the report on Javier's other drug dealing because Javier told Mr. Stanley he had never been involved in drug dealing before. The new discovery wasn't a threat to add charges – it was information relevant to estimating a likely sentence, because it undermined Javier's argument that he deserved leniency because he had no history of involvement with drugs.

Of course, Mr. Stanley might have lied to Mr. Trevino: he might have made up the story about threatened additional charges against Javier. But the record contains no possible motive for Mr. Stanley to have done that, and two veteran attorneys attested to Mr. Stanley's good character and reputation for truthfulness at the § 2255 hearing.

It's also possible that Mr. Stanley didn't tell Mr. Trevino the government *would* file new charges against Javier, but only explained the possibility that, having evidence to support new charges, the government *might* do so if the brothers didn't plead guilty. Were that the case, Mr. Stanley would still have had an actual conflict between Javier (who might be charged with more) and Mr. Trevino (who wouldn't face additional charges, but whose guilty plea could help fend off new charges against Javier). But the record offers no reason why Mr. Stanley might have thought the government would file new charges against Javier if Mr. Trevino (and Javier) didn't plead guilty. Mr. Stanley had been practicing criminal law for at least 35 years by this point (Mr. Korpal testified that he had known Mr. Stanley from the criminal bar since 1978). Given that experience, it is reasonable to assume that Mr. Stanley would have recognized the conflict; he would realize that if the government took so unorthodox a plea bargaining stance, he and Mr. Tuszynski would have to withdraw. AUSA Schaffer, having practiced since 1981, seems likely to have known that as well.

Further, given Mr. Stanley's experience, it's reasonable to infer that if he believed Mr. Trevino's guilty plea somehow foreclosed new charges against

9

Javier, he would have insisted that this provision be included in Mr. Trevino's written plea agreement, or told the court about it at the change of plea hearing, or both. He did neither. Mr. Stanley wasn't asked at the change of plea hearing about additional promises from the government, but Mr. Trevino was – and so was Javier, whose change of plea dialog was conducted at the same time. The magistrate judge asked, "Are there any promises that each of you or either of you are relying on that are not contained in that written plea agreement?" One said, "No, Your Honor"; the other said, "There is not, Your Honor."

If Mr. Stanley believed that either or both of that day's guilty pleas prevented the government from adding charges against Javier, it is likely that at least Javier's plea agreement would have specified that limitation because Javier would have been the beneficiary of such a promise. Javier's plea agreement, like his brother's, hinted at no such promise. Neither Mr. Stanley nor Javier mentioned such a promise to the magistrate judge.

Mr. Schaffer, at the hearing on Mr. Trevino's petition, specifically denied any promise not to file new charges against Javier if everyone pleaded guilty; indeed, he specifically denied that any thought was ever given to filing new charges against Javier even if *nobody* pleaded guilty, and he made clear that the government only planned to use the information to rebut Javier's characterization of himself as a first-time offender. Mr. Schaffer, Mr. Stanley, Mr. Trevino, and Javier all implicitly or explicitly denied that there was any such promise or understanding at the change of plea hearing. Mr. Stanley was a very

10

experienced criminal defense attorney, who would have been likely to inform the court of any aspect of the agreement that would have benefitted either client; he didn't do so. Based on the record before the court, things didn't happen the way Mr. Trevino described them in, and at the hearing on, his petition under § 2255. Accordingly, no conflict of interest existed and Mr. Trevino isn't entitled to relief on his first ineffective assistance of counsel claim.

B. Claim 2: Ineffective Assistance in Abandoning Suppression Motion

Next, Mr. Trevino argues that his attorneys were ineffective in advising him to abandon his pending motion to suppress by pleading guilty before the court decided the motion. He disputes the police officers' story of what happened in the search of his house, and insists that when officers arrived they "conducted a walk-through to look for marijuana due to the immediate strong odor of raw marijuana." During the walk-through of the house, the officers found a safe and forced it open with a crowbar; only *after* finding guns and drugs in the safe did they get the search warrant. Mr. Trevino insists that his suppression motion was sure to succeed, so his attorneys were ineffective in giving up on it before the government even responded.

Mr. Trevino isn't entitled to relief on his claim. The government points out that an attorney's decision to abandon a motion before the court rules on it is the sort of strategic judgment a reviewing court typically won't second-guess, and also argues that the suppression motion was meritless in any case. The

government is likely correct, but the court can't reach the substance of Mr. Trevino's ineffective assistance claim for procedural reasons.

Mr. Trevino voluntarily waived this claim in his plea agreement. The plea agreement states that Mr. Trevino agreed to give up his right to appeal or collaterally attack his sentence on any ground "including ineffective assistance of counsel," unless the alleged ineffectiveness related directly to the negotiation of the appeal waiver itself. A plea agreement's waiver of the right to appeal and to file a petition under § 2255 is generally enforceable, so long as the waiver is clearly included in the agreement. *See* United States v. Ortuno, 218 F. App'x 517, 518 (7th Cir. 2007) ("We have repeatedly held that waivers of appeal are valid and binding"); United States v. Behrman, 235 F.3d 1049, 1051 (7th Cir. 2000) (holding that voluntary waivers of appeal are enforceable). A defendant can attack his conviction notwithstanding an appeal waiver in certain limited circumstances not relevant here, such as challenges based upon contractual grounds like mutual mistake or breach, United States v. Cook, 406 F.3d 485, 487 (7th Cir. 2005), or when the sentence imposed turns out to be greater than the statutory maximum sentence for the offense of conviction, United States v. Bownes, 405 F.3d 634, 637 (7th Cir. 2005).

Mr. Trevino insists that his plea (and so his waiver) was involuntary due to the alleged ineffective assistance, which if true would allow him to escape his waiver of his right to challenge the conviction. *See* Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000) (holding that when a defendant claims the

waiver was involuntary or counsel was ineffective in negotiating it, he can raise that claim notwithstanding the waiver). But Mr. Trevino's argument is purely conclusory. He doesn't explain how the alleged ineffectiveness – advising him to give up on the suppression motion and plead guilty – made his decision to plead guilty involuntary. He doesn't claim that his attorney misrepresented any of the terms of the agreement, wrongly advised him about his possible sentence, or otherwise caused Mr. Trevino to accept a bargain he didn't understand. At heart Mr. Trevino is simply claiming that his attorney misjudged the likelihood of a favorable ruling on the suppression motion, and so misjudged the desirability of a guilty plea.

Even if Mr. Trevino were correct that he would have been better off had he stuck with the suppression motion rather than pleading guilty, an attorney's judgment about the relative merits of litigating an evidentiary issue versus accepting a favorable plea deal is a paradigmatic example of the kind of strategic judgment to which a reviewing court owes great deference. More importantly, his attorney's estimate regarding the likelihood of success on suppression doesn't undermine the knowing and voluntary nature of his plea and therefore doesn't escape his waiver. Because his attorney's abandonment of the suppression motion doesn't affect the "knowing and voluntary" character of his guilty plea, any violation of Mr. Trevino's rights was cured when he chose to plead guilty. *See* United States v. Lopez-Armenta, 400 F.3d 1173, 1175 (9th Cir. 2005) ("[I]t is well-settled that an unconditional guilty plea…cures all antecedent

constitutional defects."). By agreeing to a plea with a waiver provision in it, Mr. Trevino freely chose to abandon any future argument that his suppression motion was more meritorious than his attorney believed.

Although the court doesn't need to reach the question of whether Mr. Trevino's suppression motion would have succeeded, the motion would clearly have been denied. Even assuming Mr. Trevino's side of the story is true – and that he could have convinced the court to accept his version over the one in the police reports – he admits that his girlfriend called the police and that when the police arrived they smelled a strong odor of raw marijuana. They sought a warrant based on that evidence and ultimately got one; the only dispute is whether the officers waited for the warrant before finding all the incriminating evidence, or whether they overzealously searched the house and opened the safe *before* the warrant had actually been secured. The dispute as to timing is probably irrelevant in light of the inevitable discovery doctrine. That doctrine holds that where officers clearly could have discovered the evidence in question pursuant to a valid search warrant but failed to get a warrant before searching, the constitutional violation is so harmless that extreme remedy of exclusion of the evidence isn't justified. *See* Nix v. Williams, 467 U.S. 431 (1984); United States v. Tejada, 524 F.3d 809, 813 (7th Cir. 2008) ("when a warrant is sure to issue (if sought), the exclusionary 'remedy' is not a remedy, for no legitimate privacy interest has been invaded without good justification, but is instead a substantial punishment of the general public") (citing United States v. Elder, 466

14

F.3d 1090, 1091 (7th Cir. 2006)).

In Mr. Trevino's case, officers had enough probable cause for a warrant based on their impressions upon entering the house (and ultimately got one), so whether they jumped the gun and started searching before the warrant issued doesn't matter for suppression purposes. Mr. Trevino suffered no harm from the officers finding without a warrant (if that's what happened) what they unquestionably would have found legitimately had they followed the proper procedures and waited for a warrant to arrive. *See* United States v. Salgado, 807 F.2d 603, 606-608 (7th Cir. 1986) (holding that where officers illegally seized evidence that they would have been able to lawfully seize had they waited for a forthcoming warrant, the defendant wasn't entitled to suppression because exclusion is inappropriate "[f]or constitutional violations that do not increase the victim's risk of being convicted of a crime, because they do not produce evidence that would not have been obtained without a violation"). Because Mr. Trevino's argument for suppression wasn't strong, his attorneys' advice to take a plea deal rather than litigating the suppression issue wasn't unreasonable and couldn't have prejudiced him.

Mr. Trevino isn't entitled to challenge the advice he received regarding the abandonment of his motion to suppress.

C. <u>Claim 3: Ineffective Assistance in Failing to Move for Recusal</u>

15

Mr. Trevino's next ground for relief is that his attorneys were ineffective in not moving to recuse the Assistant United States Attorney prosecuting the case, Frank Schaffer. Mr. Trevino argues that as an Indiana state court prosecutor in 1997, Mr. Schaffer had prosecuted Mr. Trevino in an unrelated state criminal matter. In Mr. Trevino's view, this shows that the prosecution against him was vindictive and Mr. Schaffer should have been disqualified from participating in the case.

This argument is foreclosed by Mr. Trevino's appeal waiver for the reasons already mentioned. Even in the unlikely event that Mr. Trevino's attorneys provided constitutionally ineffective assistance by not making a recusal motion under these circumstances,[3] such ineffectiveness would have nothing to do with the negotiation of the plea agreement or the appeal waiver it contained. Accordingly, Mr. Trevino voluntarily gave up his right to raise this claim when he signed the plea agreement.

D. Claim 4: Ineffective Assistance for Failure to Investigate

Mr. Trevino's final claim is that his attorneys were ineffective because they "failed to investigate the factual basis" underlying the charges against him. An

---

3 Although the court doesn't reach the merits of this claim due to the appeal waiver, it notes that a motion to recuse based solely on the fact that someone involved in Mr. Trevino's federal prosecution had been involved in his prior state case would have been summarily denied. See United States v. Algee, 309 F.3d 1011, 1015 (7th Cir. 2002) ("[T]he fact that there was some overlap between the personnel in the state prosecutor's office and the United States Attorney's office does not support a finding of prosecutorial vindictiveness.").

attorney generally has a duty to adequately investigate the material facts in a case, and can render ineffective assistance by not conducting a reasonable investigation viewed from the attorney's perspective at the time. *See* Rompilla v. Beard, 545 U.S. 374, 380 (2005). A petitioner who claims his attorney's failure to adequately investigate violated his Sixth Amendment rights must "provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." Richardson v. United States, 379 F.3d 485, 488 (7th Cir. 2003).

Had his attorneys more adequately investigated the facts, Mr. Trevino insists, they would have discovered that he never possessed the alleged cocaine and that there was no adequate factual basis justifying the charges against him. This claim – like Mr. Trevino's other claims already discussed – is barred by the waiver provision in his plea agreement, because it alleges ineffective assistance of counsel not directly related to the negotiation of the plea. This claim also fails for the independent reason that Mr. Trevino doesn't explain what sort of investigation the attorneys should have done, or what evidence they would have turned up. Mr. Trevino simply insists without elaboration that had his attorneys looked more closely, they would have seen that the government had no case. That isn't enough to carry his burden of showing that he is entitled to relief.

Moreover, Mr. Trevino's claim that further investigation would have proven his innocence conflicts with his own testimony; he admitted in open court that there *was* a factual basis for the charges. At the change of plea hearing, he

17

testified that he "possessed a quantity of a white powder substance that [he] believed was cocaine in [his] home," that he intended to sell the substance, and that the substance was tested and shown to be cocaine. When the court mentioned that his admission sounded like he was reading off a sheet rather than explaining what he did in his own words, Mr. Trevino insisted that what he had just read was "exactly what happened."

The representations a defendant makes at a plea hearing are "entitled to a presumption of verity," and when the defendant later changes his story and makes a motion "premised on defendant's untruthfulness during plea proceedings, a court may (unless the defendant has a compelling explanation) reject that motion out of hand." United States v. Collins, 796 F.3d 829, 834 (7th Cir. 2015). Mr. Trevino hasn't offered a compelling explanation for why he admitted at the hearing to possessing cocaine with intent to sell yet now insists that he never possessed the cocaine. Accordingly, the court credits his earlier admission that he possessed the cocaine; it follows that his attorney couldn't have been ineffective for inadequately investigating the factual basis for the charges. No amount of investigation would have changed the reality of Mr. Trevino's guilt, which he himself has admitted.

IV. CONCLUSION

For these reasons, the court DENIES Mr. Trevino's § 2255 motion to vacate his sentence (Doc. No. 103). Moreover, because Mr. Trevino hasn't made a

substantial showing of the denial of a constitutional right, the court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

SO ORDERED.

ENTERED: <u>May 26, 2016</u>

<u>        /s/ Robert L. Miller, Jr.        </u>
Judge
United States District Court